# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 19-CR-95** |
| | : | |
| **v.** | : | **(Judge Jones)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **HAUSHEN MCINTYRE** | : | |

## **MEMORANDUM AND ORDER**

### I.  Introduction

Haushen McIntyre has a criminal history which spans two decades and includes multiple arrests and convictions for drug offenses, violent crimes and obstruction of justice. He has twice been convicted of drug trafficking, and also has a prior conviction for obstruction of justice. Further, McIntyre has employed numerus aliases in the past and is an admitted poly-substance drug abuser. McIntyre has also been charged with new criminal conduct while on bail for other criminal charges, conduct which reveals that he is not amenable to bail supervision.

Notwithstanding this constellation of factors which caution against the defendant's release, this case comes before us for consideration of a motion for temporary release of the defendant filed pursuant to 18 U.S.C. § 3142(i), which provides that:

> The judicial officer may, . . ., permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to

be necessary for preparation of the person's defense or for another compelling reason.

18 U.S.C. § 3142 (i).

In the instant case, the "compelling reason" which the defendant asserts justifies the defendant's temporary release from pre-trial detention is the COVID-19 pandemic that is sweeping the nation, and the dangers of infection which may result from close confinement in a custodial setting. This motion is fully briefed by the parties, and we have afforded all parties the opportunity to make evidentiary presentations in support of their respective positions regarding temporary release for the defendant. Therefore, this motion is ripe for resolution.

We acknowledge the gravity of the defendant's concerns, which are shared by all Americans as this nation faces a pandemic without precedent in the past century of our nation's history. In addressing the instant motion, we must assess these individual medical concerns, apply the legal benchmarks mandated by Congress, and weigh these concerns against the important societal interests promoted by the Bail Reform Act, which calls for the detention of those defendants who present a danger to the community. Having conducted an individualized assessment of the facts and circumstances presented in this case, for the reasons set forth below it is ordered that the motion for temporary release is DENIED.

## II.     <ins>Factual Background and Procedural History</ins>

On March 27, 2019, the defendant was charged with possession with intent to distribute cocaine, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a prohibited person in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. §§ 924(c) and 922(g)(1), respectively. Following the defendant's arrest, the United States moved pursuant to 18 U.S.C. § 3142 to detain the defendant pending trial. Initial proceedings and a detention hearing were then conducted in this case on July 9, 2019.

At the time of these initial proceedings, the probation office prepared a comprehensive pre-trial services report, which provided the following information concerning the defendant's social and medical history, prior history of substance abuse, and criminal record: It appears as though the defendant has a lengthy history of engaging in antisocial behavior dating back to as early as age 19. This behavior generated a varied and cascading array of criminal charges totaling some 77 counts within the span of two years brought by law enforcement in Philadelphia; however it appears that many of these charges were dismissed or withdrawn. In contrast, it appears that once the defendant reached Harrisburg, Pennsylvania some time around 2001, his criminal activity continued such that he pleaded guilty or was found guilty of three drug-related charges in the span of four years (2001-2005). This drug addiction continued and indeed escalated by 2018 when the defendant received

additional gun and drug-related charges which currently remain pending in Dauphin County. The defendant also has three active traffic arrest warrants pending in Dauphin County. The pre-trial services report also recommended the defendant's detention based upon a careful evaluation of the following individual characteristics of the defendant: the defendant's lengthy criminal history including multiple convictions for drug trafficking and use of illicit substances, the nature of the alleged instant offenses, the defendant's history of failing to appear, his use of multiple aliases, and the defendant's pending local case. In addition, detention was recommended based on the defendant's current detention in DCP in lieu of $250,000 bail and his three active arrest warrants in Dauphin County for traffic citations.[1]

Following a hearing, we ordered the defendant detained pursuant to 18 U.S.C. § 3142, finding that the defendant presented a risk of flight and danger to the community, and that there was no condition or combinations of conditions which could assure the safety of the community or the defendant's appearance in court as required. On this score, we specifically found that the defendant had not overcome the presumption in favor of his detention and that he was otherwise held pending resolution of state charges in Dauphin County.

---

[1] We have since been informed that while these Dauphin County charges were pending, McIntyre was charged in Perry county on June 28, 2019 with an array of offenses involving drug possession, driving under the influence, and possession of false identification. McIntyre committed these crimes while on release, a consideration which further cautions against his release.

The instant motion for temporary release does not focus upon or directly challenge any of these initial detention findings or determinations. Instead, the defendant's motion for release rests upon a concern shared by all: the risk of infection due to the current coronavirus pandemic. As the defendant notes, this risk of community spread is heightened in a custodial setting, where the very nature of confinement limits the ability of individuals to engage in the type of social isolation that is recommended to curb the spread of this disease. Beyond this generalized concern, the defendant cites scant information which would provide a basis for a finding that he possesses specific and individualized factors which heighten these medical concerns in the instant case. Quite the contrary, the defendant reports as being healthy with no apparent underlying health conditions that would make him more susceptible or vulnerable to the effects of COVID-19 than the general American public.

The Government, in turn, opposes this motion, arguing that the defendant has not carried his burden of proof and persuasion under § 3142(i) to justify temporary release. As discussed below, we agree and will deny this motion.

### III. Discussion

#### A. Temporary Release Under 18 U.S.C. § 3142

While cast as a motion seeking temporary release under 18 U.S.C. § 3142 (i), this motion is best understood and evaluated in the context of the Bail Reform Act

as a whole. In the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, Congress created a comprehensive set of statutory guidelines governing release and detention decisions for criminal cases in federal court. As one court has recently observed:

> Before this Court can turn to the analysis under 18 U.S.C. § 3142(i), it is essential to look at the overarching structure of the statute. The fundamental precept of the Bail Reform Act mandates the release of individuals so long as the court can be reasonably assured the defendant does not pose a flight risk or danger to the community. 18 U.S.C. § 3142. To the extent that conditions, or a combination of conditions, can be fashioned to reasonably provide such assurances, the individual must be released, as detention is "the carefully limited exception." Id.; see also United States v. Salerno, 481 U.S. 739, 755 (1987).
>
> In assessing what conditions, if any, can be fashioned, judges are directed to take into account available information pertaining to the factors identified under 18 U.S.C. § 3142(g). Those factors include the nature and circumstances of the offense charged, including whether it involves controlled substances or firearms; the weight of the evidence against the defendant; the defendant's history and characteristics (including history relating to drug abuse, defendant's criminal history, and record of appearing at court proceedings); whether the detainee was on probation, parole, or other court supervision at the time of the allegedly offensive conduct; and the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g). Ultimately, the information provided in each case aids in the individualized assessment that will result in the release or the detention of the person.

United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020).

Beyond this individualized assessment mandated by law, the Bail Reform Act also enjoins us to weigh release and detention decisions against a series of statutory presumptions. Principal among these presumptions which guide us in this custodial calculus are a series of statutory presumptions in favor of detention for defendants

charged with violent crimes, serious drug trafficking offenses, or crimes involving the sexual exploitation of the most vulnerable in society, our children. As to these defendants, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed," one of these enumerated offenses. 18 U.S.C. § 3142 (e)(3). In this regard, it is also well-settled that an "indictment [charging an enumerated offense] is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)." United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986).

Cast against this comprehensive statutory scheme prescribing the procedure for making initial bail and detention decisions, § 3142(i) constitutes a limited safety valve provision, enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142 (i). Until recently, there was a relative paucity of case law construing for us what would constitute a "compelling reason" justifying the temporary release of a previously detained defendant. Of late, however, a rising tide of case law has construed the meaning and reach of § 3142(i) in the context of continuing custody decisions in the age of coronavirus.

From these cases a few guiding principles have emerged. First, the very nature of the standard prescribed by statute—which requires a showing of some "compelling reason" to warrant temporary release from custody—suggests that such motions must meet exacting standards and "the few courts that have ordered temporary release on the basis of such a condition have done so only 'sparingly' and typically in order 'to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries[,]' " United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *3 (D.D.C. Mar. 30, 2020) (quoting United States v. Hamilton, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)).

Second, like the initial decision to detain, a determination of whether a movant has shown compelling reasons justifying temporary release is an individualized judgment which takes into account the unique circumstances of each case and each defendant. Thus, courts have allowed for temporary release where a defendant's specific circumstances presented a compelling and immediate need for release. For example, release of a defendant is permitted under § 3142(i) when that defendant is suffering from a terminal illness or serious injuries. See, e.g., United States v. Scarpa, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS that could no longer be managed by correctional authorities); see also United States v. Cordero Caraballo, 185 F. Supp. 2d 143 (D.P.R. 2002)

(permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his body, and where the United States Marshal's Service reused to take custody of him until his wounds closed).

There is a necessary corollary to this principle, calling for an individualized and specific showing of a compelling reason to satisfy the movant's burden of proof under § 3142(i). Cases construing § 3142(i) generally "have rejected emergency motions for release of otherwise healthy and potentially violent defendants based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020) (citing United States v. Cox, No. 19-cr-271, 2020 WL 1491180 (D. Nev. Mar. 27, 2020)); United States v. Green, No. 19-cr-304, 2020 WL 1477679 (M.D. Fla. Mar. 26, 2020); United States v. Steward, No. 20-cr-52, 2020 WL 1468005 (S.D.N.Y. Mar. 26, 2020); United States v. Hamilton, No. 19-cr-54, 2020 WL 1323036 (E.D.N.Y. Mar. 20, 2020); see also United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020). Rather, at a minimum courts have typically required proof of a "[d]efendant's particular vulnerability to the disease [in order to] constitute a compelling reason for release under § 3142(i)." United States of Am. v. Keith Kennedy, No. 18-20315, 2020 WL

1493481, at *4 (E.D. Mich. Mar. 27, 2020), reconsideration denied sub nom. United States v. Kennedy, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

The United States Court of Appeals for the Third Circuit has very recently underscored for us the necessity of a more particularized showing of a compelling need for release beyond proof of the generalized risks posed by COVID-19 when a prisoner seeks release from jail. Addressing this question in another custodial setting, petitions for compassionate release from custody, the court of appeals stated in terms that are equally applicable here that:

> We do not mean to minimize the risks that COVID-19 poses in the . . . prison system, particularly for inmates . . . . But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify . . . release.

United States of America v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

Finally, any determination of whether a movant has established compelling reasons which now warrant temporary release from custody must take into account the important considerations of public safety and flight which animated the original decision to detain the offender pending trial. Thus, "in considering the propriety of temporary release, the court would need to balance the reasons advanced for such release against the risks that were previously identified and resulted in an order of detention." United States of America v. Cox, 2020 WL 1491180, *2 (D. Nev. Mar. 27, 2020). In practice, therefore, a decision on a motion seeking release under §

10

3142(i) entails an informed judgment assessing both individual health concerns and broader public safety interests. In reaching these judgments the court must:

> [E]valuate at least the following factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a "compelling reason" exists such that temporary release is "necessary."
> § 3142(i)

United States v. Clark, No. 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020).

It is against this statutory backdrop that we evaluate the instant request for temporary release from custody.[2]

---

[2] In this motion, McIntyre invites us to forego a consideration of his particular health risks, and find as a general matter that the COVID-19 pandemic, standing alone, creates an emergency which justifies prisoner release. We must decline this invitation since the court of appeals has told us that we must "carefully and impartially apply the proper legal standards that govern *each individual's particular request for relief*," United States v. Roeder, No. 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020)(emphasis added), and has specifically admonished us that: "[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify . . . release." United States of America v. Raia, No. 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020).

11

## B. The Defendant's Motion for Temporary Release Will Be Denied.

Our analysis of this motion begins with the proposition that "[w]hile the COVID-19 pandemic has given rise to exceptional and exigent circumstances that require the prompt attention of the courts, it is imperative that they continue to carefully and impartially apply the proper legal standards that govern each individual's particular request for relief." United States v. Roeder, No. 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020). In this case, our careful and impartial application of the legal standards mandated by § 3142(i), requires us to assess both the public safety grounds for the defendant's initial detention as well as: (1) the specificity of the defendant's stated COVID-19 concerns; (2) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant; and (3) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

Turning first to an individualized evaluation of the defendant's COVID-19 concerns, our assessment begins with a recognition of the unprecedented health care crisis presented by the coronavirus pandemic. However, it is clear that under § 3142(i), we cannot grant release of a defendant previously deemed to be a danger to public safety or a risk of flight "based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *6 (D.D.C. Mar. 30, 2020). In this case,

beyond a genuine, but generalized, concern regarding the risks created by COVID-19, the defendant provides very little to support an individualized finding that there is a compelling medical reason for his release. In contrast, the Government has outlined the efforts being taken by the U.S. Marshals and the prison facilities that house Marshal detainees to ensure the safety and well-being of these prisoners. Thus, the defendant has failed to make the threshold individualized showing necessary to secure release under § 3142(i).

We must then weigh those specific health concerns against the substantial public safety considerations which led us to order the defendant's detention in the first instance. In this case, the following factors, unique to the defendant, compelled the decision to detain the defendant as a risk of flight and danger to the community: It appears as though the defendant has a lengthy history of engaging in antisocial behavior dating back to as early as age 19. This behavior has since generated a varied and cascading array of criminal charges including drug and firearms-related charges which currently remain pending in Dauphin County. Further, the defendant has repeatedly used aliases, has been charged with new criminal offenses while on bail, is a poly-substance drug abuser, and has been convicted of obstruction of justice. The defendant also has three active traffic arrest warrants pending in Dauphin County. We specifically found that the defendant had not overcome the presumption in favor of his detention and that he was otherwise held pending resolution of state

charges in Dauphin County. Thus, the public safety concerns which animate any decision under the Bail Reform Act continue to weigh heavily in favor of the defendant's detention pending trial.[3]

---

[3] We note that the specific statutory context of § 3142(i), which controls here, and our prior findings that the defendant's release would present a danger to the community thoroughly distinguish this case from Thakker v. Doll, 1:20-CV-840, an immigration detention case relied upon by the defendant in his motion. Simply put, this case involves an entirely different statutory framework, and the compelling public safety considerations inspired by our finding that this defendant presented a danger to the community were completely absent in Thakker.

Further, to the extent that McIntyre alleges that the conditions of his confinement constitute cruel and unusual punishment, we are constrained to disagree.

> " When an Eighth Amendment claim arises in the context of a challenge to conditions of confinement, we must determine if prison officials acted with 'deliberate indifference' to the inmate's health. Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The objective inquiry is whether the inmate was 'denied the minimal civilized measure of life's necessities.' Hudson, 503 U.S. at 9, 112 S.Ct. 995, 117 L.Ed.2d 156." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir.2000).

Smith v. Donate, No. 4:10-CV-2133, 2012 WL 3537017, at *13 (M.D. Pa. June 15, 2012), report and recommendation adopted, No. 4:10-CV-2133, 2012 WL 3537008 (M.D. Pa. Aug. 15, 2012). Here, the evidence rebuts any claim of deliberate indifference to inmate needs by prison staff. Quite the contrary, the prison has taken steps sanctioned by the CDC to ensure inmate safety and to date those efforts have been successful since there have been no cases of coronavirus reported at the Dauphin County Prison,

## IV.     Conclusion

Weighing and balancing these countervailing considerations, we conclude that the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) will be DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

An appropriate order follows.

So ordered this 16th day of April 2020.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 19-CR-95** |
| | : | |
| v. | : | **(Judge Jones)** |
| | : | |
| | : | **(Magistrate Judge Carlson)** |
| **HAUSHEN MCINTYRE** | : | |

## **ORDER**

In accordance with the accompanying Memorandum Opinion, the defendant's motion for temporary release pursuant to 18 U.S.C. § 3142(i) is DENIED. "Because the Court is mindful that both the conditions in . . . jail and the COVID-19 pandemic itself are both rapidly evolving, it will entertain a renewed request for release if—at some point in the future—it becomes clear" that there are compelling reasons that justify the defendant's release. United States of America v. Lee, No. 19-CR-298 (KBJ), 2020 WL 1541049, at *7 (D.D.C. Mar. 30, 2020). Therefore, this order is entered without prejudice to renewal of this motion at some future date should the defendant's circumstances materially change.

So ordered this 16th day of April 2020.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge